# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MICHAEL S. POLSKY, not individually,**
**but solely in his capacity as Liquidating**
**Trustee for the Olsens' Liquidating Trust,**
             Appellant,

      v.                                                Case No. 11-C-1049

**UTICA ENERGY LLC, et al.,**
             Appellees.

## ORDER

This is an appeal from an order of the bankruptcy court. Before me now is the appellees' motion to dismiss the appeal as moot.

## I. BACKGROUND

David and Paul Olsen are brothers who operate various agricultural businesses. In recent years, they have had financial problems, and in December 2010 they and their spouses filed for bankruptcy under Chapter 11. The bankruptcy court administered all of the Olsens' estates together as part of a single proceeding and, in August 2011, confirmed a plan of reorganization (the "Plan").

The present appeal arises out of the sale of the Olsens' membership interests in certain companies that I will refer to as the "Utica Entities" or "Utica." These membership interests were part of the Olsens' bankruptcy estates. Pursuant to the Plan, the interests were transferred to a liquidating trust so that they could be sold. The appellant, Michael Polsky, is the trustee of that liquidating trust.

The Utica Entities are closely held corporations, and their operating agreements contain right-of-first-refusal provisions. Under those provisions, if a member wishes to sell his interest, he must give Utica and its other members a chance to match any offer he receives from a third party. In the bankruptcy court, the trustee took the position that he could offer the Utica interests for sale without honoring the right-of-first-refusal provisions. Utica and its other members, who are the appellees in the present appeal, took the position that they had the right to match any offer the trustee received. The bankruptcy court held that the trustee could not disregard the right-of-first-refusal provisions. See Sept. 28, 2011 Bankruptcy Court Order, ECF No. 1-9 at 37-42.

The trustee filed a notice of appeal of the bankruptcy court's order, which commenced the present appeal. In the meantime, the trustee proceeded to market the Utica interests and received a bid from a third party for $1.5 million. Pursuant to the operating agreements and the bankruptcy court's ruling, the trustee gave Utica and the other members an opportunity to exercise their rights of first refusal. The other members elected to purchase the interests, and on December 21, 2011, the trustee conveyed the interests to the other members in exchange for $1.5 million.

On January 16, 2012, Utica and the other members filed the present motion to dismiss this appeal as moot. They argue that because the sale of the Utica interests has been completed and, under bankruptcy law, cannot be reversed or unwound, the trustee can obtain no meaningful relief through this appeal. In response to this motion, the trustee states that he is not seeking to reverse or unwind the sale of the Utica interests. Br. in Opp. at 3 & 15, ECF No. 13. However, he contends that he can still obtain meaningful relief. In his view, a reversal of the bankruptcy court's decision would set the stage for a

damages claim against some or all of the appellees. The alleged damages would consist of the difference between the amount that the trustee realized on the sale of the Utica interests to the appellees and the amount that he would have realized had he been able to market the interests to third parties without having to worry about whether the appellees would exercise their rights of first refusal. The trustee believes that the presence of the right-of-first-refusal provisions caused third parties to bid less for the Utica interests than they otherwise would have. He also claims that, in order to encourage third parties to make any bids at all, he had to offer to pay the high bidder a $300,000 "break-up" fee in the event that the appellees exercised their rights. Because the appellees did exercise their rights, the trustee paid the high bidder $300,000 and thus realized only $1.2 million from the sale. The trustee believes that, at a minimum, if the bankruptcy court's order were reversed, he would have a claim for $300,000 in damages against one or more of the appellees. Therefore, he claims, this appeal is not moot.

## II. DISCUSSION

Article III of the Constitution confines the federal courts to adjudicating actual cases or controversies. U.S. CONST. art. III, § 2. The requirements of Article III case-or-controversy standing are threefold: (1) an injury in-fact; (2) fairly traceable to the defendant's action; and (3) capable of being redressed by a favorable decision from the court. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992); Allen v. Wright, 468 U.S. 737, 751 (1984). The asserted injury must be both (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Lujan, 504 U.S. at 560. Moreover, standing must be present at all stages of the litigation, including on appeal. See

3

Korczak v. Sedeman, 427 F.3d 419, 420 (7th Cir.2005). When a party with standing at the inception of the litigation loses it due to intervening events, the inquiry is really one of mootness. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000). Mootness is "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Id. (quotation marks omitted).

Appellees argue that this appeal is moot by operation of 11 U.S.C. § 363(m).[1] That provision of the bankruptcy code provides that the reversal on appeal of an authorization to sell property does not invalidate the sale of that property to a good-faith purchaser unless the bankruptcy court stayed the sale pending appeal.[2] The policy underlying § 363(m) is to promote finality and prevent the value of bankruptcy assets from being driven down by the uncertainty that would exist if the court retained the power to undo completed sales. See In re CGI Indus., Inc., 27 F.3d 296, 298–99 (7th Cir. 1994); In re UNR Indus., 20 F.3d at 770. When § 363(m) applies and the appellant does not obtain a

---

[1]Alternatively, appellees contend that this appeal should be dismissed under the doctrine formerly known as "equitable mootness." See In re UNR Indus., Inc., 20 F.3d 766, 768–69 (7th Cir. 1994). Equitable mootness is not actually a species of mootness but is an equitable doctrine under which a court declines to exercise its raw power to grant the appellant effective relief. At the present time, I will focus on whether this appeal is moot in the "real" or "constitutional" sense and will not discuss whether equity supports dismissal.

[2]Specifically, § 363(m) provides as follows:

The reversal or modification on appeal of an authorization under [certain other provisions of the bankruptcy code] of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

4

stay of the sale pending appeal, the appeal becomes moot because the court will lack the power to grant any relief. See Hower v. Molding Sys. Eng'g Corp., 445 F.3d 935, 937–38 (7th Cir. 2006) (affirming dismissal of appeal as moot where § 363(m) applied and appellant failed to obtain stay pending appeal); In re CGI Indus., 27 F.3d at 299 ("we have repeatedly held that when a party challenges the bankruptcy court's order approving the sale of estate property to a good faith purchaser, it must obtain a stay of that order pending appeal, lest the sale proceed and the appeal become moot"). In the present case, the trustee did not obtain a stay pending appeal (he did not even request one), and the appellees contend that therefore this case is moot.

The trustee disputes that § 363(m) applies to the present case. However, I need not address this argument because the trustee has waived any right that he may have had to invalidate the sale of the Utica interests by stating that he "is not seeking to unwind or reverse the sale of the Utica Interests." See Br. in Opp. at 3 & 15, ECF No. 13; Kaczmarek v. Rednour, 627 F.3d 586, 594 (7th Cir. 2010) (stating that waiver is the intentional relinquishment of a known right). Instead of seeking to unwind the sale and hold a new auction in which the appellees have no rights of first refusal, the trustee seeks damages that would compensate him for the difference between the actual sale price and the price that he would have gotten had he been able to disregard the appellees' rights of first refusal. Essentially, then, the trustee agrees that this appeal must be dismissed as moot unless a victory here would set up a claim for damages against the appellees.

The problem is that, as I see things, a victory here would have no effect whatsoever on a claim for damages against the appellees. The trustee has not explained his legal theory for obtaining damages with precision, but from what he has said it appears that he

5

plans to assert claims for tortious interference or slander of title against the appellees based on their assertion of their rights of first refusal. See Br. in Opp. at 15–16, ECF No. 13. I am struggling to identify any way in which these claims could be considered non-frivolous, but even if they had merit they would be unaffected by what happens in this appeal. Whether the appellees tortiously interfered or committed slander of title depends on the conduct of the appellees, not on the bankruptcy court's order. So, even if I affirmed that order, the trustee would be able to assert tortious-interference or slander-of-title claims against the appellees, and the appellees could not use the bankruptcy court's order as a defense. If I reversed that order, I would not be creating any tortious-interference or slander-of-title claims that did not already exist. Thus, I cannot see any way in which a decision on the merits of this appeal could affect the rights of the parties.

However, before dismissing this appeal as moot, I want to make sure I am not overlooking anything. Therefore, I will schedule a status conference for the purpose of allowing the trustee to explain exactly how the outcome of this appeal could affect his ability to obtain damages from the appellees. The trustee shall be prepared to identify his precise legal theory for obtaining damages (or an offset, or whatever he chooses to call it) from the appellees. The trustee shall also be prepared to show how a decision on the merits of this appeal could have an impact on that legal theory.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that a telephonic status conference will be held on **March 28, 2012 at 11:00 a.m.** for the purpose specified above. The court will initiate the call.

6

Dated at Milwaukee, Wisconsin, this 5th day of March 2012.

                                                 s/_____
                                                 LYNN ADELMAN
                                                 District Judge